No. ——

First Circuit

-----

DAMON v. RECEIVERS. OF THE T. & P. RAILWAY CO.

NORTH RIVER INSURANCE CO. v. RECEIVERS OF THE T. P. RAILWAY CO.

(Consolidated)

-----

(December 7, 1926. Opinion and Decree.)

-----

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Appeal—Par. 625.**
The finding of the trial court on matters of fact, unless clearly erroneous, are affirmed.

Appeal from the Eighteenth Judicial District Court of Louisiana, Parish of Iberville. Hon. H. C. Carruth, Judge.

Action by George H. Damon against J. D. Lancaster and C. L. Wallace, Receivers of the T. & P. Ry. Co. And North River Insurance Co. against the same defendants, consolidated.

There was judgment for defendants and plaintiffs appealed.

Judgment affirmed.

*Laycock, Barron & Laycock,* of Baton Rouge and Plaquemine, attorneys for plaintiff, appellant.

*Albin Provosty* of New Roads, and *Jules A. Carville,* of Plaquemine, attorneys for defendant, appellee.

LECHE, J.   These two cases were consolidated for trial and argument. One is for damages for personal injury arising from a collision between the plaintiff's automobile and a train of the defendant railway company, and the other is for damages to the automobile. The facts alleged to support the liability of defendant are the same.

The Texas & Pacific owns and operates a branch road, connected with its main line at Plaquemine, La., which extends parallel with the public highway and the bayou Plaquemine some ten or twelve miles in a southwesterly direction from the town of Plaquemine. It is called the Bayou Plaquemine or Indian Village Branch and is used exclusively for carrying freight. At a point a few miles out of Plaquemine there is a spur of the Inlian Village Branch which crosses the public road and extends into the yards of the Louisiana Cooperage Company, along and near the cooper shop, by means of which the products of the Cooperage Company are loaded on cars and shipped to market. Cars are switched in and out of this spur three or four times a week and

the engine together with the freight cars for the use of the Cooperage Company, must of necessity cross the public road several times whenever such switching is done.

The plaintiff, Geo. H. Damon, lived at some point beyond the Louisiana Cooperage Company's plant on Bayou Plaquemine, frequently drove in automobile from his home or place of business, on the public road which is crossed by defendant's spur track, to the town of Plaquemine, and it is not disputed that he was familiar with the locality where the accident, the subject of the present litigation, happened.

At the time of the collision, Damon was on his way to Plaquemine, and a freight train crew of the railway company was engaged in switching freight cars across the public highway to and from the Louisiana Cooperage Company's cooper shop. Damon's view of the train was partly obstructed by the cooper shop. The train consisting of an engine, tender and three freight cars, was approximately one hundred and fifty feet long; the cooper shop is fifty feet long and is situated parallel to the railroad track at an angle to the public road, one corner of same being five feet and the other corner being about fifteen feet from the road. The locomotive was in front of the freight cars and was moving forward at a speed of three miles an hour and the bell was being rung. According to the testimony of Ryan, the only witness for plaintiff, who saw Damon approaching the crossing of the switch track, Damon was driving his automobile at about ten miles per hour. The automobile struck the step of the pilot of the locomotive, mounted partly over the cowcatcher, by which it was shoved some twelve feet, was turned over and almost completely wrecked. Damon was pulled out from under the wrecked automobile by the railway engine crew and was painfully injured, though not killed. Such are the salient facts as disclosed by the record.

Damon filed the present suit, but died of causes unconnected with this accident, before the trial of the case, and the court is therefore deprived of his version of the manner in which the collision took place.

It is impossible to reconcile the facts recited, as disclosed by the evidence, with plain ordinary reason, except by attributing to Damon, foolhardiness or senseless recklessness, and that would be equally unreasonable and unjustifiable. No human being endowed with the natural instinct of life preservation, could thus have acted. An automobile driven at ten miles per hour may be stopped within a space less than its length, and it is impossible to conceive how it could collide at a crossing on a public road with a locomotive visible five or fifteen feet from the edge of the road which it is about to cross, when moving at a speed of three miles per hour.

It is much more likely and more reasonable to assume that the witness Ryan was much mistaken when he estimated the speed of Damon's automobile at ten miles per hour. One of defendant's witnesses who saw Damon approaching the crossing, says Damon was traveling at thirty-five miles per hour. The dent made to the step of the locomotive pilot indicates that Damon ran into the locomotive and our belief from the testimony upon these two facts is that Damon miscalculated the speed of the locomotive, tried to cross ahead of it, and thus brought about the accident.

There is no doubt that the railway company was negligent in not having a flagman at the crossing, to warn the traveling public, as its locomotive emerged from be-

hind the cooper shop on the public highway. On the other hand, Damon who was familiar with the locality, could, by using the least precaution, have seen the rear part of the moving train, could hear the sound of the bell on the locomotive and was imprudent in attempting to make the crossing ahead of the locomotive. We believe he was also guilty of negligence and thereby contributed to the unfortunate accident. The trial judge so found and we see no reason to disturb his finding.